Attorney Grievance Commission of Maryland v. Runan Zhang, Misc. Docket AG No. 11, September Term, 2013

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who: (1) represented her niece in annulment/divorce matter in Virginia even though lawyer was not licensed to practice law in Virginia and even though conflict of interest existed due to lawyer's representation of niece's husband in immigration matter; (2) provided incompetent representation and advanced ground for annulment without conducting adequate research or speaking to client; (3) authorized co-counsel to sign settlement agreements on behalf of niece despite failing to advise niece of agreements and to obtain her consent; (4) misrepresented niece's ability to communicate in English and her consent to terms of settlement agreements; (5) held herself out as specializing in immigration and corporate law; and (6) concealed her role in niece's representation from trial court. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.2(a) (Scope of Representation), 1.4(a) (Communication), 1.7(a) (Conflict of Interest: General Rule), 1.16(a) (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.7(a) (Lawyer as Witness), 4.1(a) (Truthfulness in Statements to Others), 5.5(a) (Unauthorized Practice of Law), 7.4(a) (Communication of Fields of Practice), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating MLRPC).

Circuit Court for Montgomery County
Case No. 28641M

Argued: May 6, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 11

September Term, 2013
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

RUNAN ZHANG
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Watts, J.
Adkins and McDonald, JJ., concur and dissent.
_____

Filed: July 21, 2014

This attorney discipline proceeding concerns a Maryland lawyer who, among other things: (1) represented her niece in an annulment/divorce matter in Virginia even though she was not licensed to practice law in Virginia and even though a conflict of interest existed due to the lawyer's representation of her niece's husband in an immigration matter; (2) provided incompetent representation and advanced a ground for annulment without conducting adequate research or speaking to her niece; (3) authorized co-counsel to sign settlement agreements on behalf of her niece despite failing to advise her niece of the agreements and to obtain her consent; (4) misrepresented her niece's ability to communicate in English and her consent to the terms of the settlement agreements; (5) held herself out as specializing in immigration and corporate law; and (6) concealed her role in her niece's representation from the trial court.

Runan Zhang ("Zhang"), Respondent, a member of the Bar of Maryland, represented her niece, Yuxuan Zhang ("Wife"), in Wife's annulment and subsequent divorce case, in the Prince William County Circuit Court in Virginia ("the Virginia Court"), against Daji Song ("Husband"), whom Zhang represented in an immigration matter. Husband filed a complaint against Zhang with the Attorney Grievance Commission of Maryland ("the Commission"), Petitioner.

On April 15, 2013, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Zhang, charging her with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.2 (Scope of Representation), 1.4 (Communication), 1.7 (Conflict of Interest: General Rule), 3.7 (Lawyer as Witness), 4.1 (Truthfulness in Statements to Others), 8.4(c) (Dishonesty,

Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC). On May 28, 2013, Bar Counsel filed in this Court an "Amended Petition for Disciplinary or Remedial Action" to add charges that Zhang violated MLRPC 1.16 (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 5.5 (Unauthorized Practice of Law), and 7.4 (Communication of Fields of Practice), as well as the corresponding Virginia Rules of Professional Conduct ("VRPC") and District of Columbia Rules of Professional Conduct ("DCRPC").[1]

On April 17, 2013, this Court designated the Honorable Michael John Algeo ("the hearing judge") of the Circuit Court for Montgomery County to hear this attorney discipline proceeding. On August 29, 2013, the hearing judge conducted a hearing. On October 24, 2013, the hearing judge filed in this Court findings of fact and conclusions of law, concluding that Zhang violated MLRPC 1.1, 1.2(a), 1.4(a), 1.7(a), 1.16(a), 3.1, 3.7(a), 4.1(a), 5.5(a), 7.4(a), 8.4(c), 8.4(d), and 8.4(a).[2]

On May 6, 2014, we heard oral argument. For the below reasons, we disbar

---

[1]Specifically, Zhang was charged with violating VRPC 1.1 (Competence), 1.2 (Scope of Representation), 1.4 (Communication), 1.7 (Conflict of Interest: General Rule), 1.16 (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.7 (Lawyer as Witness), 4.1 (Truthfulness in Statements to Others), 5.5 (Unauthorized Practice of Law), 7.4 (Communication of Fields of Practice), and 8.4 (Misconduct), and DCRPC 1.1 (Competence), 1.2 (Scope of Representation), 1.4 (Communication), 1.7 (Conflict of Interest: General Rule), 1.16 (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.7 (Lawyer as Witness), 4.1 (Truthfulness in Statements to Others), 5.5 (Unauthorized Practice), and 8.4 (Misconduct).

[2]The hearing judge based his conclusions of law solely on the MLRPC, and did not address the alleged violations of the VRPC and DCRPC.

Zhang.

## BACKGROUND

In his opinion, the hearing judge found the following facts, which we summarize.

On June 21, 2000, this Court admitted Zhang to the Bar of Maryland. Zhang maintains a solo practice, The Law Offices of Runan Zhang, with offices in Rockville, Maryland and the District of Columbia. Zhang's website states that she specializes in immigration and corporate practice, and that she practices family law in Maryland, the District of Columbia, and Virginia.

On April 10, 2010, Wife, Zhang's niece, a non-United States citizen, married Husband, a United States citizen, in Fairfax, Virginia. On April 21, 2010, Zhang filed a Form I-130 (Petition for Alien Relative), with the United States Citizenship and Immigration Services ("USCIS") on Husband's behalf for Wife's benefit. From April 2010 until she withdrew her appearance on November 26, 2010, Zhang represented Husband in the immigration matter.

By November 2010, Husband and Wife had separated, and Wife wished to pursue an annulment of the marriage. In November 2010, Zhang assisted Wife in drafting a complaint for annulment that Wife could file *pro se* in the Virginia Court. Zhang was not a member of the Bar of Virginia and, accordingly, asked her colleague, Diana Metcalf ("Metcalf"), "to serve as co-counsel." Metcalf is a member of both the Bar of Maryland and the Bar of Virginia, and had shared office space with Zhang in Rockville, Maryland since approximately 2003.

On November 11, 2010, Zhang and Metcalf agreed: (1) that they would represent

Wife as co-counsel; and (2) that Metcalf would move for Zhang's admission to the Virginia Court *pro hac vice*. An agreement memorializing those two points was drafted but not executed. At the beginning of the representation, Zhang provided Wife's e-mail address to Metcalf, but advised that Wife did not fluently speak English, and that Metcalf would thus be unable to directly communicate with Wife. Zhang assumed the responsibility of directly communicating with Wife. In reliance on Zhang's advisement concerning Wife's inability to fluently speak English, Metcalf had no direct contact with Wife from November 2010, when she was first retained, until March 1, 2011.

On November 15, 2010, Zhang recognized that she had a conflict of interest due to her representation of Husband in the immigration matter, so she did not enter her appearance in the annulment matter. Instead of resolving the conflict, Zhang deliberately and consciously chose to continue to act as counsel in all matters except for entering her appearance in the annulment matter and disclosing the representation to the Virginia Court. On November 18, 2010, Wife, *pro se*, filed in the Virginia Court a Complaint for Annulment, which had been prepared by Zhang on Wife's behalf. Although Zhang had prepared the complaint for annulment, Wife filed the complaint for annulment *pro se* in an attempt to conceal from the Virginia Court Zhang's conflict of interest and role as Wife's counsel. The complaint for annulment contained allegations of immigration fraud as to the marriage and the Petition for Alien Relative that Zhang had filed on Husband's behalf.

On December 10, 2010, Husband, through his attorney Leon S. Demsky ("Demsky"), filed a demurrer to the complaint for annulment. On January 7, 2011,

- 4 -

Zhang, Metcalf, and Demsky appeared in the Virginia Court for a hearing, and Metcalf entered her appearance as Wife's counsel. At some point before the hearing, Zhang and Metcalf had negotiated an agreement ("the January Agreement") with Husband and Demsky. The January Agreement provided that Husband would withdraw the demurrer, Wife would amend the complaint for annulment, and the parties would seek only an annulment, not monetary or other equitable relief. Based on Zhang's assurances that Wife had consented to the January Agreement's terms, Metcalf signed the January Agreement on Wife's behalf. Although Zhang assured Metcalf that Wife had consented to the terms of the January Agreement, in actuality, Zhang had not discussed the terms of the January Agreement with Wife before its execution.

After execution of the January Agreement, the parties could not agree on the ground for the annulment. As a result, Husband, through Demsky, filed a second demurrer. Meanwhile, Zhang, who was acting as Wife's immigration attorney, arranged for Wife to obtain a visa to travel from China to the United States to participate at trial.

On February 9, 2011, Zhang conducted legal research and prepared an amended complaint for annulment and an opposition to the second demurrer, and offered to Metcalf to file the pleadings under Metcalf's name or Wife's name. On February 10, 2011, with Metcalf's permission, Zhang signed Metcalf's name to the opposition, which she filed in the Virginia Court. On February 16, 2011, Metcalf filed in the Virginia Court the amended complaint for annulment.

On February 17, 2011, Michael W. Lu ("Lu"), Demsky's co-counsel, e-mailed Zhang to explore potential settlement of the annulment matter. Lu suggested that an

annulment be pursued on the grounds of misunderstanding and mutual mistake based on the circumstance: "that Wife, due to immigration issues, had been unable to return to the United States following the marriage to complete the marriage ceremonies, and that while the parties had registered for marriage, the marriage was never consummated." As Wife's "legal counsel," Zhang e-mailed Lu that mutual misunderstanding and mutual mistake were not acceptable grounds for the annulment; Zhang instead suggested that the parties pursue an annulment based on an alleged medical condition of Husband, namely, impotency. As of February 17, 2011, when the e-mail exchange between Zhang and Lu occurred, Zhang had never discussed with Wife whether the couple had engaged in marital relations, and had no basis to pursue an annulment based on impotency.[3] Zhang and Lu eventually agreed that Husband would pay $1,500 for a "global settlement" and "admit he has an impotency problem." On February 17, 2011, at 6:25 p.m., Zhang forwarded to Metcalf a copy of her e-mail correspondence with Lu with the message: "We may need to sign an agreement in court tomorrow."

On the morning of February 18, 2011, Metcalf appeared in the Virginia Court to argue in opposition to the second demurrer. Metcalf had not read the e-mail that Zhang had sent the previous evening, and thus was not aware that any settlement discussions had occurred between Zhang and Lu. Approximately fifteen minutes before the hearing,

---

[3]The hearing judge stated that Zhang had "argued that she misunderstood the difference between failure to consummate a marriage and impotency." The hearing judge discredited this argument, however, stating: "Given the fact that [Zhang] admits that at no time prior to February 19, 2011 did she discuss Wife's sex life with her, she did not have any basis in fact to suggest either grounds for annulment."

Zhang advised Metcalf that Husband was "impotent" and that, the previous night, Zhang and Lu had reached an agreement under which Wife would pursue an annulment based on Husband's medical condition. Metcalf questioned Zhang about how Husband's medical condition was discovered at such a late date, and inquired about the details of the negotiations. Zhang assured Metcalf that Wife had participated in the negotiations and that she had communicated with Wife and Lu late into the evening until the agreement was reached. Wife had not, however, participated in the settlement discussions that occurred on February 17, 2011. In actuality, it was not until February 19, 2011, that Zhang, for the first time, discussed the terms of the agreement with Wife.

On February 18, 2011, before the hearing began, Demsky, Metcalf, and Zhang negotiated the final terms of the settlement agreement ("the February Agreement"), which, in pertinent part, provided that Husband would pay Wife $2,000 as full and complete settlement of all claims, and that Husband "agrees that the annulment is uncontested, he will not object, defend, or contest any Complaint for Annulment based upon [his] being impotent [.]"

Prior to execution of the February Agreement, Zhang told Metcalf that: (1) she (Zhang) had discussed the terms of the February Agreement with Wife; (2) Wife understood and agreed to the terms; and (3) Wife authorized Metcalf to sign the February Agreement on her behalf. Metcalf was concerned about the implications of signing the February Agreement without speaking with Wife, and repeatedly asked Zhang whether Wife had agreed to the February Agreement's terms. Zhang repeatedly responded that Wife had agreed to the terms and authorized Metcalf to sign the February Agreement. In

reliance on Zhang's representations, Metcalf signed the February Agreement on Wife's behalf.

On February 18, 2011, Demsky and Metcalf submitted to the Virginia Court a proposed consent order reflecting the February Agreement's terms. The Honorable Lon E. Ferris signed the proposed consent order.

On February 19, 2011, for the first time, Zhang spoke with Wife about the February Agreement. Wife immediately advised Zhang that Husband was not, in fact, "impotent." Instead of informing Metcalf at that time that the February Agreement had been signed without Wife's authorization, Zhang attempted to negotiate additional terms binding Husband to the February Agreement. On February 25, 2011, for the first time, Zhang admitted to Metcalf that she had not discussed the terms of the February Agreement with Wife prior to its execution and that Wife had advised her that Husband did not have the alleged medical condition.

On March 1, 2011, Wife directly contacted Metcalf for the first time, sending an e-mail in which she wrote, in fluent English, that: (1) she had not been advised of the terms of the February Agreement before its execution; (2) Husband was not "impotent"; and (3) she did not consent to or authorize the execution of the February Agreement. Between March 1 and March 3, 2011, Zhang and Metcalf researched Virginia law and drafted a motion to set aside the February Agreement.

On March 3, 2011, Zhang filed in the Virginia Court a motion to set aside the February Agreement and consent order. The Virginia Court scheduled a hearing on the motion for March 18, 2011. Between March 3 and March 18, 2011, Zhang worked with

Metcalf, as co-counsel, to prepare for the hearing. As part of that preparation, Zhang drafted notes and an argument for Metcalf. The notes that Zhang prepared contained multiple misrepresentations, including that: (1) Wife had given Metcalf "general authorization" to settle the case; (2) Husband had "demanded to get the settlement done in court on February 18, 2011"; and (3) there had been a "miscommunication" between Metcalf and Wife "due to language difficulties." As a means of shielding herself from her misconduct (*i.e.*, her misrepresentation to Metcalf that Wife authorized her to sign the February Agreement), Zhang attempted to persuade Metcalf to make these misrepresentations to the Virginia Court in support of the motion to set aside the February Agreement.

On March 18, 2011, Zhang, Metcalf, and Demsky appeared in the Virginia Court for the hearing on the motion to set aside. Metcalf advised the Virginia Court that Zhang had assured her that Wife knew of and agreed to the February Agreement's terms. The Virginia Court vacated the February 18, 2011 consent order, and stated that an attempted fraud had been perpetrated on the Virginia Court and that there was no good faith basis for the "impotency" claim.

On April 7, 2011, Husband filed in the Virginia Court a counter-complaint for divorce. In response to interrogatories that Husband propounded, Wife identified Zhang as a potential witness related to the immigration representation and allegations of events that occurred before and during the marriage.

On August 18, 2011, the Virginia Court denied Wife's complaint for annulment. At some point afterward, Husband and Wife were granted a divorce based on mutual

separation.

In short, the hearing judge found as follows concerning Zhang's role in the representation of Wife:

> Beginning in November 2010 and continuing at all relevant times thereto, [Zhang] represented Wife in her pursuit of an annulment and divorce in Prince William County, Virginia. Although [Zhang] did not enter her appearance in the [Virginia Court], there is no question that she was acting as an attorney as she provided legal counsel, advice, and representation to Wife as co-counsel to [] Metcalf []. [Zhang] provided legal advice, drafted pleadings and motions, assisted in preparation for hearings, conducted legal research, and participated in settlement negotiations on behalf of Wife. [Zhang] also stated to [Lu] that she represented Wife. The Court finds [Zhang]'s argument that she was not acting as an attorney and only as a "concerned family member" to be without merit.

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference the hearing judge's conclusions of law. See Md. R. 16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."); Md. R. 16-759(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); see also Attorney Grievance Comm'n v. Fader, 431 Md. 395, 426, 66 A.3d 18, 36 (2013).

As to exceptions, in Attorney Grievance Comm'n v. Bocchino, 435 Md. 505, 529, 80 A.3d 222, 235 (2013), we recently reiterated:

> When a party files exceptions to the hearing judge's findings of fact, those exceptions will be overruled so long as the findings are not clearly erroneous. When a party takes exception to the hearing judge's conclusions of law, those exceptions will be overruled so long as the conclusions are supported by the facts found.

(Citations omitted).

- 10 -

## DISCUSSION

### A. Motion to Dismiss

Zhang moves to dismiss this attorney discipline proceeding on the grounds that the MLRPC do not apply to her conduct and that the Amended Petition for Disciplinary or Remedial Action was not sufficiently clear and specific to inform her of which rules of professional conduct applied.[4]

We conclude that the MLRPC apply to Zhang's conduct. Zhang had a law office in Maryland, and shared with Metcalf a conference room in a building in which Metcalf rented law office space in Maryland. As did the hearing judge implicitly, we reasonably infer that a substantial part of Zhang's conduct (including her representation that Wife had difficulty communicating in English, her soliciting Metcalf to serve as co-counsel, her authoring notes for Metcalf, and her discussions and preparation with Metcalf about the case) occurred in Maryland. Generally, "the rule[s] of professional conduct to be applied shall be . . . the rules of the jurisdiction in which the lawyer's conduct occurred[.]" MLRPC 8.5(b)(2).[5]

---

[4]In her filing, Zhang moved to dismiss this attorney discipline proceeding for lack of jurisdiction. At oral argument, however, Zhang's counsel conceded that this Court has jurisdiction. See MLRPC 8.5(a)(1) ("A lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State, regardless of where the lawyer's conduct occurs.").

[5]We reject Zhang's contention that the MLRPC do not apply to her conduct because the annulment/divorce matter was pending in the Virginia Court until June 19, 2012. See MLRPC 8.5(b)(1) ("[T]he rule[s] of professional conduct to be applied shall be . . . for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits[.]"). Bar Counsel filed the Petition for Disciplinary (Continued...)

- 11 -

We conclude that the Amended Petition for Disciplinary or Remedial Action was "sufficiently clear and specific to inform [Zhang] of any professional misconduct charged[.]" Md. R. 16-751(c). In the Amended Petition for Disciplinary or Remedial Action, Bar Counsel charged Zhang with violating rules of professional conduct that have substantively identical counterparts in the MLRPC, VRPC, and DCRPC.[6] Indeed, Zhang fails to identify any material conflict among the MLRPC, VRPC, and DCRPC in question.

For the above reasons, we deny the motion to dismiss.

## B. Contentions Other Than Exceptions

We address (and reject) Zhang's five contentions that do not constitute exceptions to the hearing judge's findings of fact and conclusions of law.

First, we reject Zhang's contention that Bar Counsel inhibited her ability to contact Husband before the hearing. Bar Counsel offered to attempt to facilitate a

---

or Remedial Action on April 15, 2013; thus, at no time during this attorney discipline proceeding was the annulment/divorce matter pending in the Virginia Court.

Similarly, we reject the contention that the predominant effect of Zhang's conduct was in Virginia. See MLRPC 8.5(b)(2) ("[T]he rule of professional conduct to be applied shall be . . . the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct."). Zhang maintained a law office in Maryland, solicited Metcalf—an attorney who shared office space to assist her in Maryland, engaged in discussions with Metcalf in Maryland, and engaged in conduct involving her representation of Wife in Maryland. In examining Zhang's contention as to predominant effect of the conduct, we find no grounds on which to alter the determination that the MLRPC applies to the case.

[6]The only distinction between the sets of rules charged worth pointing out is that the VRPC does not contain a subsection corresponding to MLRPC 8.4(d), concerning conduct prejudicial to the administration of justice.

telephonic or electronic deposition of Husband.  Additionally, Bar Counsel provided

Zhang's counsel with Husband's address.  Thus, Bar Counsel actually facilitated Zhang's

ability to contact Husband before the hearing.

Second, we reject Zhang's contention that her rights were violated because she

could not confront the complainant (*i.e.*, Husband), who did not testify at the hearing.

The right of confrontation under the Sixth Amendment to the United States Constitution

and Article 21 of Maryland Declaration of Rights applies to a criminal case, not an

attorney discipline proceeding.  Cf. Attorney Grievance Comm'n v. Marcalus, 414 Md.

501, 521, 996 A.2d 350, 362 (2010) ("An attorney disciplinary proceeding . . . is not

governed by the same standard of proof as a criminal trial, and it does not demand the

same evidentiary burdens as does a criminal prosecution."  (Citation omitted)).[7]

Third, we reject Zhang's contention that the hearing judge erred in sustaining Bar

Counsel's objections after Zhang's counsel asked Metcalf: "What provision of the

Maryland or Virginia or the District of Columbia rules excuses you from having to

---

[7]We are unpersuaded by Zhang's reliance on this Court's *dicta* in Attorney Grievance Comm'n v. Lee, 387 Md. 89, 114, 874 A.2d 897, 912 (2005) ("[A]ny concerns that a respondent . . . has been prejudiced by false statements made during the Peer Review process are ameliorated by the fact that the respondent . . . ultimately will have the opportunity to confront the complainant, under oath, at an evidentiary hearing." (Citations omitted)).  The Peer Review process is a confidential and informal process in which a panel consisting of lawyers and at least one layperson hears from the complainant and the respondent and determines whether the matter can be resolved without formal disciplinary action.  Id. at 99 n.7, 874 A.2d at 903.  In Lee, id. at 98, 102, 874 A.2d at 902, 904, the complainant filed a complaint against the respondent lawyer, spoke during the panel review process, and testified at the evidentiary hearing.  No statute, Maryland Rule, or holding of this Court, however, requires that a complainant testify at a hearing in an attorney discipline proceeding.

communicate directly with your client?"; "[A]re you aware of any exception to Rule 1.4 in Maryland or Virginia that creates an exception excusing you in communicating directly with your client?"; and "Isn't the critical inquiry whether or not there is confidential information that is being used in one representation to the next?" Zhang's counsel asked for Metcalf's opinion about the MLRPC, VRPC, DCRPC, and conflicts of interest. The hearing judge had not admitted Metcalf as an expert in the fields of the MLRPC, VRPC, DCRPC, or conflicts of interest.

Fourth, we reject Zhang's contention that the hearing judge erred in sustaining Bar Counsel's objections after Zhang's counsel asked Zhang: "Going back to your representation in the immigration matter, did you obtain from [Husband] any confidential information during the course of that representation?"; and "In the course of your immigration representation, did you obtain any information from [Husband] aside from his name, address, and that he would be the sponsor for [Wife]'s immigration application?" Zhang's counsel asked for confidential information. Generally, "[a] lawyer shall not reveal information relating to representation of a client[.]" MLRPC 1.6(a).

Fifth, we reject Zhang's contention that the hearing judge erred in declining to admit into evidence the Commission's investigator's report. In so contending, Zhang cites multiple exceptions to the rule against hearsay, but fails to explain why any such exception applies to the Commission's investigator's report.

### C. Findings of Fact

The Commission does not except to any of the hearing judge's findings of fact. Zhang excepts to a multitude of the hearing judge's findings of fact. We sustain only one of Zhang's exceptions to the hearing judge's findings of fact.

First, we overrule Zhang's exception to the hearing judge's finding that her website stated that she practiced family law in Virginia. The hearing judge admitted into evidence printouts of Zhang's website, which contained a page that was entitled "Representation in Civil Action, especially family law practice" and, below "Practices includ[e,]" included a link to "Type of divorce at Virginia." Thus, the hearing judge did not clearly err in finding that Zhang's website stated that she practiced family law in Virginia.

Second, we overrule Zhang's exception to the hearing judge's finding that she filed a Form I-130 (Petition for Alien Relative) with USCIS on Husband's behalf for Wife's benefit. The Form I-130 states that Husband is "the petitioner" and that "[y]our relative [*i.e.*, Wife] is the beneficiary." Thus, the hearing judge did not clearly err in finding that Zhang filed the Form I-130 with USCIS on Husband's behalf for Wife's benefit.

Third, we overrule Zhang's exception to the hearing judge's finding that she represented Husband in the immigration matter "from April 2010 until . . . November 26, 2010." On April 21, 2010, Zhang filed the Form I-130 with USCIS. In a letter dated

August 3, 2010, Husband informed the USCIS that he was withdrawing the Form I-130.[8]

In a letter dated November 26, 2010, Zhang informed USCIS: "It came to my attention

**recently** that [Husband] . . . has withdrawn his petition . . . , therefore, this is my notice

that I am no longer on this case[.]" (Emphasis added). The record contains no written

communications that indicate that Zhang learned about Husband's letter before

November 2010. Thus, the hearing judge did not clearly err in finding that Zhang

represented Husband in the immigration matter "from April 2010 until . . . November 26,

2010[,]" when she notified USCIS that she was no longer involved with the case.

Fourth, we overrule Zhang's exception to the hearing judge's finding that she

drafted the complaint for annulment that Wife filed *pro se*. On November 15, 2010,

Zhang e-mailed Metcalf, stating:

> **I got all the documents ready** for filing the annu[]lment case in VA. But
> realized that I was the counsel representing both [Wife] and [Husband.] If
> he hired a[] lawyer, they would disqualify me for the conflict interest. I am
> thinking to file the complaint first as the pro se case, and get you involved
> when the court hearing comes up.

(Emphasis added). Thus, the hearing judge did not clearly err in finding that Zhang

drafted the complaint that Wife filed *pro se* in the annulment/divorce matter.[9]

Fifth, we overrule Zhang's exception to the hearing judge's finding that she

---

[8]At the hearing, Zhang testified that she believed that her representation of
Husband ended on August 3, 2010. In his opinion, the hearing judge did not credit this
part of Zhang's testimony. We "give due regard to the opportunity of the hearing judge
to assess the credibility of witnesses." Md. R. 16-759(b)(2)(B).

[9]Although the hearing judge admitted into evidence an excerpt of a deposition at
which Zhang testified that she did not assist Wife in preparing the complaint, "resolving
any conflict in the evidence" is the hearing judge's role. Marcalus, 414 Md. at 512, 996
A.2d at 356 (citation omitted).

provided legal advice to Wife and represented Wife in the annulment/divorce matter. As Zhang has acknowledged, she drafted pleadings, prepared for hearings, and conducted legal research on Wife's behalf. Metcalf testified that it had been her understanding that Zhang would represent Wife in the annulment/divorce matter, and that Metcalf was "to sponsor [] Zhang, who is not admitted to practice in Virginia pro hac vice." And, the hearing judge expressly discredited Zhang's allegation that she acted only as a concerned relative of Wife. In any event, "a personal relationship . . . with a purported 'client' does not preclude a court from finding that an attorney-client relationship exists." Attorney Grievance Comm'n v. Shoup, 410 Md. 462, 489, 979 A.2d 120, 136 (2009) (citation omitted). Thus, the hearing judge did not clearly err in finding that Zhang provided legal advice to Wife and represented Wife in the annulment/divorce matter.

Sixth, we overrule Zhang's exception to the hearing judge's finding that she informed Lu that she represented Wife in the annulment/divorce matter. On February 17, 2011, Zhang e-mailed Lu, stating that, as Wife's "**legal counsel**[,]" she could not agree to a proposed ground for annulment. (Emphasis added). Thus, the hearing judge did not clearly err in finding that Zhang informed Lu that she represented Wife in the annulment/divorce matter.

Seventh, we overrule Zhang's exception to the hearing judge's finding that she was Metcalf's "colleague" and, per agreement, co-counsel in the annulment/divorce matter. At the hearing, in at least three instances, Metcalf testified that Zhang was her "co-counsel." Additionally, the record establishes that, on at least two occasions, Zhang and Metcalf met to discuss Wife's case, the possible grounds for annulment, the

complaint for annulment, and Metcalf's sponsoring Zhang for *pro hac vice* admission before the Virginia Court. Thus, the hearing judge did not clearly err in finding that Zhang was Metcalf's "colleague" and, per agreement, co-counsel in the annulment/divorce matter.

Eighth, we overrule Zhang's exception to the hearing judge's finding that she recognized she had a conflict of interest and deliberately and consciously chose to continue to act as counsel in all manners except for entering her appearance in the annulment matter and disclosing the representation to the Virginia Court. On November 15, 2010, Zhang e-mailed Metcalf, stating that she "realized that [she]was the counsel representing both [Wife] and [Husband] in the green card application immigration case. If he hired a[] lawyer, **they would disqualify me for the conflict interest**." (Emphasis added). Additionally, Metcalf testified that she did not sponsor Zhang for *pro hac vice* admission because Zhang remembered that she "had represented [H]usband in the sponsorship of her other family member[,]" and thus "could not now represent an opposing party to him in a divorce." Nonetheless, Zhang continued representing Wife by drafting pleadings, preparing for and attending hearings, and participating in settlement negotiations. Thus, the hearing judge did not clearly err in finding that Zhang recognized she had a conflict of interest and deliberately and consciously chose to continue to act as Wife's counsel in all manners except for entering her appearance in the annulment matter and disclosing the representation to the Virginia Court.

Ninth, we overrule Zhang's exception to the hearing judge's finding that she informed Metcalf that Wife did not fluently speak English and would not be able to

directly communicate with Metcalf. At the hearing, Metcalf testified that Zhang informed her that Wife "wanted all of the communication to go through [] Zhang" and that Wife's "English was not very good[.]" Thus, the hearing judge did not clearly err in finding that Zhang informed Metcalf that Wife did not fluently speak English and would not be able to directly communicate with Metcalf.

Tenth, we overrule Zhang's exception to the hearing judge's finding that she "appeared" in the Virginia Court for hearings on January 7, 2011 and March 18, 2011. The context of the hearing judge's opinion makes clear that the hearing judge found that Zhang was physically present in the Virginia Court, not that Zhang had entered an appearance in the Virginia Court.

Eleventh, we sustain Zhang's exception to the hearing judge's finding that Metcalf signed the January Agreement on Wife's behalf "based on [Zhang]'s assurances that Wife consented to the terms"; the record indicates that Metcalf signed the January Agreement based on Zhang's assurances that Metcalf was authorized to sign the agreement because Zhang "had authority to speak for" Wife. At the hearing, Metcalf testified: "Zhang represented that communications by [Wife]'s request would go through [Zhang, a]nd that [Zhang] had authority to speak for" Wife. At a deposition, Zhang testified that: (1) Wife and Wife's parents had authorized Zhang "to make the decision for the best for" Wife; (2) Zhang had informed Metcalf that Metcalf was authorized to sign the January Agreement on Wife's behalf; and (3) although Zhang spoke with Wife and Wife's parents before the January 7, 2011, hearing, Zhang did not discuss the January Agreement's terms, which had not been determined yet. Thus, the hearing

judge's finding that Zhang assured Metcalf that Wife specifically consented to the terms of the January Agreement was clearly erroneous.

Twelfth, we overrule Zhang's exception to the hearing judge's finding that she did not discuss the January Agreement's terms with Wife before its execution. The record demonstrates that neither Zhang nor Metcalf discussed the January Agreement's terms with Wife before its execution, and that Metcalf executed the January Agreement in reliance on Zhang's representation that Zhang had the authority to speak for Wife.

Thirteenth, we overrule Zhang's exception to the hearing judge's finding that, on February 9, 2011, she prepared an amended complaint for annulment and opposition to be filed under Metcalf's or Wife's name. On February 9, 2011, Zhang e-mailed Metcalf, stating:

> I am going to Manassas tomorrow, will file the amended complaint and the opposition tomorrow. I called the clerk, she said the judge order[ed] the amendment to [the] complaint, [so] I changed the complaint to a simple form based on the fraud. I can file under your name or my niece's name whichever you prefer.

Thus, the hearing judge did not clearly err in finding that, on February 9, 2011, Zhang prepared an amended complaint and opposition to be filed under Metcalf's or Wife's name.

Fourteenth, we overrule Zhang's exception to the hearing judge's finding that "[b]ecause Wife was the Plaintiff, she carried the burden of affirmatively proving the grounds for annulment." As Zhang concedes, this is an accurate statement of the law.

Fifteenth, we overrule Zhang's exception to the hearing judge's finding that on February 17, 2011, she "immediately made clear [to Lu] that Wife sought an annulment,

- 20 -

by whatever avenue may be available." On February 17, 2011, in response to Lu's e-mail about a potential settlement of the case, Zhang e-mailed Lu, stating that Wife was "willing to fight in the court for the annulment[,]" Wife's "goal [wa]s to annul the marriage," and "the cour[t] has to grant the annulment." Thus, the hearing judge did not clearly err in finding that Zhang made it clear to Lu that Wife wanted an annulment through any available means.

Sixteenth, we overrule Zhang's exception to the hearing judge's finding that she suggested the parties pursue an annulment on the ground of Husband's alleged "impotency." On February 17, 2011, in response to Lu's settlement offer, Zhang e-mailed Lu, rejecting the proposed settlement and suggesting for the first time: "You might consider the following ground for the annulment: Grounds for annulment can also include impotency. . . . If a marriage was never consummated, this constitutes viable grounds for annulment." (Paragraph break omitted). Thus, the hearing judge did not clearly err in finding that it was Zhang who first suggested that the parties pursue an annulment on the ground of Husband's alleged "impotency."

Seventeenth, we overrule Zhang's exception to the hearing judge's finding that she misunderstood the difference between failure to consummate a marriage and "impotency" and did not have any basis in fact to suggest either as a ground for annulment. At the hearing, Zhang testified that her only research as to failure to consummate a marriage consisted of "Googling" the phrase "no marriage consummation" and reading that "no consummation [was] equal to[, and was] a ground for impotency." Zhang admitted that she did not know what "impotency" meant, but "assumed it was the same as the no

- 21 -

consummation." At a deposition, Zhang also admitted that, prior to negotiating with Lu, she had not discussed with Wife whether the couple had engaged in marital relations. Thus, the hearing judge did not clearly err in finding that Zhang misunderstood the distinction between failure to consummate a marriage and impotency, and that she lacked a basis for suggesting either as a ground for annulment.

Eighteenth, we overrule Zhang's exception to the hearing judge's finding that she told Metcalf that she had spoken with Wife and obtained her consent to the February Agreement. Metcalf testified that, on February 18, 2011, Zhang advised that the parties had reached an agreement to pursue an annulment based on Husband's "impotency," and led her to believe that Wife had actively participated in the negotiations. Metcalf testified that she repeatedly asked Zhang whether she had discussed the terms with Wife and whether Wife was "okay" with the February Agreement, and Zhang responded affirmatively. Metcalf testified that, afterward, Zhang informed her "that she had not, in fact, talked to [Wife] the night of the 17th." Zhang's testimony confirms that she did not speak with Wife during the negotiation process or prior to execution of the February Agreement; according to Zhang, she did not speak with Wife until the day after the February Agreement was signed. Thus, the hearing judge did not clearly err in finding that Zhang told Metcalf that she had spoken with Wife and obtained Wife's consent to the February Agreement.

Nineteenth, we overrule Zhang's exception to the hearing judge's finding that she attempted to persuade Metcalf to make misrepresentations to the Virginia Court in support of the Motion to shield herself from her misconduct–namely, misrepresenting to

Metcalf that Wife authorized her to sign the February Agreement. On March 17, 2011, Zhang provided Metcalf notes containing a "statement that [she] could make or that [she] could use in [her] preparations for what [she] was going to say to the" Virginia Court. The statement contained multiple misrepresentations, including that: (1) Wife had given Metcalf "general authorization" to settle the case; (2) Husband "demanded to get the settlement done in court on February 18, 2011"; and (3) there was "miscommunication" between Metcalf and Wife due to "language difficulties." Zhang's notes did not mention Zhang or the role she played during the settlement negotiations. Thus, the hearing judge did not clearly err in finding that, to shield herself from her misconduct, Zhang attempted to persuade Metcalf to make misrepresentations to the Virginia Court.

Twentieth, we overrule Zhang's exception to the hearing judge's finding that the Virginia Court stated that an attempted fraud had been perpetrated on the Virginia Court and that there was no good faith basis for the "impotency" claim. The hearing judge admitted into evidence a transcript of the March 18, 2011, hearing before the Virginia Court. According to the transcript, the Virginia Court granted the motion to set aside and stated: "This is a mutual fraud on the Court . . . I'm going to vacate the prior order as there is no good faith basis for the impotency claim on either party." Thus, the hearing judge did not clearly err in finding that the Virginia Court stated an attempted fraud had been perpetrated.

### D. Conclusions of Law

The Commission does not except to any of the hearing judge's conclusions of law. As a preliminary matter, Zhang contends that the hearing judge's conclusions of law "are

categorically flawed" because the hearing judge applied the MLRPC and failed to "differentiate predicate facts underlying Virginia [R]ule violations and predicate facts underlying Maryland Rule violations." For the above reasons, the hearing judge properly applied the MLRPC to the facts of this case. We, therefore, overrule this general exception. Next, we address Zhang's specific exceptions to the hearing judge's conclusions of law.

## MLRPC 1.1 (Competence)

Zhang excepts to the hearing judge's determination that she violated MLRPC 1.1, and argues that clear and convincing evidence does not establish she was incompetent because Metcalf was Wife's counsel.

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1. "Compliance with [MLRPC 1.1] requires more than knowing what to do. It requires applying the knowledge to the client's problem. . . . 'Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of [MLRPC] 1.1" Attorney Grievance Comm'n v. McCulloch, 404 Md. 388, 397-98, 946 A.2d 1009, 1015 (2008) (citation and internal quotation marks omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 1.1. The record demonstrates that Zhang acted as counsel for Wife in the annulment/divorce matter in Virginia, despite not being licensed to practice law in Virginia, and without the "legal knowledge, skill, thoroughness and preparation

reasonably necessary for the representation." MLRPC 1.1. Zhang's lack of the legal knowledge and thoroughness to represent Wife is most vividly demonstrated by her negotiation of the February Agreement. Zhang did not understand or appreciate the legal distinction between a failure to consummate a marriage and Husband's alleged "impotence," and her research into the matter consisted only of a Google search of the phrase "no marriage consummation[.]" Zhang testified that, at the time, she did not know what "impotency" meant, but "assumed it was the same as the no consummation." Nevertheless, Zhang failed to conduct any legal research or to speak with Wife before suggesting to Lu that Husband consider an annulment on the ground of Husband's "impotence."

### MLRPC 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Lawyer)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 1.2(a) because the record demonstrates that she had "general authority to represent [Wife]'s interests."

MLRPC 1.2(a) provides, in relevant part:

[A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

In Attorney Grievance Comm'n v. Thaxton, 415 Md. 341, 362, 1 A.3d 470, 482 (2010), we held that a lawyer violated MLRPC 1.2(a) by "fail[ing] to obtain his client's consent to a settlement[.]"

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 1.2(a). The record demonstrates that Zhang authorized Metcalf to sign both the January Agreement and the February Agreement, even though Wife did not know of the terms of the agreements and had not consented to the agreements. Metcalf executed the January Agreement based Zhang's assurances that she was authorized to sign the agreement, even though Zhang acknowledged at deposition that she had not discussed the terms of the agreement with Wife prior to its execution. Metcalf executed the February Agreement based on Zhang's assurances that that she had discussed the February Agreement's terms with Wife, and that Wife had participated in the negotiations and consented to the terms of the agreement. In actuality, Zhang had not spoken with Wife about the February Agreement or obtained Wife's consent, and did not speak with Wife until the day after the February Agreement was signed. Put simply, there were two occasions on which Zhang instructed Metcalf to execute settlement agreements on Wife's behalf despite not having discussed the terms with Wife and not securing Wife's consent to enter into the settlement agreements.[10]

---

[10]Although Zhang may have had general authority to speak on behalf of Wife and to make decisions in Wife's best interests, such authority did not extend to execution of settlement agreements absent Wife's consent. It was not in Wife's best interests to enter into the February Agreement on the false ground of Husband's "impotence," as Wife "did not agree that [Husband] was impotent" and a motion to set aside the February Agreement had to be filed. Whether Metcalf should have raised an issue about Zhang's authorization is not relevant where Zhang assured Metcalf that Wife authorized signing the agreements and represented to Metcalf that Wife knew of and consented to the terms of the February Agreement.

## MLRPC 1.4(a) (Communication)

Zhang excepts to the hearing judge's determination that she violated MLRPC 1.4(a) given her general authority to "represent[] the interests of [Wife] in negotiations to achieve an annulment[.]"

MLRPC 1.4(a) provides, in pertinent part:

A lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
> (2) keep the client reasonably informed about the status of the matter;
> (3) promptly comply with reasonable requests for information; and
> (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the [MLRPC] or other law.

Comment [2] to MLRPC 1.4 explains that "a lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . . must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer."

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 1.4(a). There were at least two occasions where Zhang failed to communicate with Wife, *i.e.*, when Zhang authorized Metcalf to execute settlement agreements on Wife's behalf despite Wife's lack of knowledge of, and consent to, the terms of the agreements. Zhang's authorization to act in Wife's best interests, as well as her general knowledge that Wife wanted to pursue an annulment, did not relieve Zhang of her responsibility under MLRPC 1.4(a) to communicate with Wife. As Comment [2]

explains, a lawyer receiving a settlement offer "must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer." Here, the record does not demonstrate that Wife knew of the substance of the proposed settlements prior to their execution. And, in the case of the February Agreement, it is clear that not only did Wife not know of the terms of the agreement, but that she would not have agreed to the terms had she known them. Zhang was obligated to communicate with Wife and to "promptly inform" Wife about the settlement agreements. MLRPC 1.4(a)(1). Zhang did not do so.[11]

### MLRPC 1.7(a) (Conflict of Interest: General Rule)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 1.7(a), and argues that she did not have an attorney-client relationship with Wife, as Metcalf was Wife's counsel. Zhang asserts that there was no conflict of interest because Husband was a former client whose representation ended on August 3, 2010, months prior to the start of the annulment/divorce case.

MLRPC 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:

---

[11] Zhang's attempt to blame Metcalf for the lack of communication is unavailing. That Metcalf was the attorney of record does not diminish Zhang's role in the negotiation process. It is clear that Zhang, not Metcalf, took the lead in negotiating the February Agreement, and that she specifically represented to Metcalf that the terms of the February Agreement had been discussed with Wife, and that Wife consented to the terms. And, in any event, whether Metcalf's conduct violates the MLRPC or VRPC is not at issue.

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 1.7(a). Zhang was Metcalf's co-counsel, and she represented Wife in the annulment/divorce matter. That Wife is Zhang's niece does not mean that Zhang's relationship with Wife during the annulment/divorce matter was strictly one of a concerned family member. It is entirely possible for a lawyer to be both a lawyer and a concerned relative in connection to a relative-client. See Shoup, 410 Md. at 489, 979 A.2d at 136 ("[A] personal relationship . . . with a purported 'client' does not preclude a court from finding that an attorney-client relationship exists." (Citation omitted)).

Zhang's representation of Husband in the immigration matter did not conclude until she withdrew her appearance on November 26, 2010. Zhang's representation of Wife began in November 2010. Accordingly, Zhang's representation in the two matters

- 29 -

overlapped in November 2010. Moreover, the allegations included in the original complaint for annulment, prepared by Zhang, contained allegations related to the immigration matter, including that Husband "used the green card application for [Wife] as the inducement tool for her to marry him[.]" In other words, the conflict of interest is substantiated by the circumstances of the overlapping cases, as well as the taking of conflicting positions in the two cases—on one hand seeking of immigration status for Wife based on the existence of the marriage and on the other hand seeking an annulment/divorce—as Zhang herself recognized in an e-mail to Metcalf on November 15, 2010, in which she stated that if Husband hired a lawyer, "they would disqualify [her] for the conflict [of] interest." As such, under MLRPC 1.7(a), Zhang could not represent Wife, absent compliance with MLRPC 1.7(b). The record does not indicate that Zhang attempted to comply with MLRPC 1.7(b) and obtain the informed consent, confirmed in writing, from both Husband and Wife.

### MLRPC 1.16(a) (Declining or Terminating Representation)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 1.16(a), and argues that she was not required to withdraw from representing Wife because she never entered her appearance in the Virginia Court.

MLRPC 1.16(a) provides, in relevant part: "[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the [MLRPC] or other law[.]" (Paragraph break omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that

Zhang violated MLRPC 1.16(a).  Zhang had a conflict of interest in representing both Husband and Wife at the same time.  Thus, although Zhang did not enter her appearance in the Virginia Court—and, indeed, could not enter her appearance because she was not licensed to practice in Virginia or admitted *pro hac vice*—Zhang was obligated to not represent Wife at all because her representation constituted a violation of MLRPC 1.7(a).[12]  Zhang did so anyway.

### MLRPC 3.1 (Meritorious Claims and Contentions)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 3.1, and argues that Lu first represented that Husband was "impotent" via e-mail on which Demsky and Husband were copied and which neither Demsky nor Husband corrected.  Zhang contends that she had a right to rely on the veracity of Lu's statements and to represent them as true to the Virginia Court.

MLRPC 3.1 provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law.  A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

A lawyer violates MLRPC 3.1 where "the lawyer is unable [] to make a good faith argument on the merits of the action taken[.]"  Cmt. [2] to MLRPC 3.1.

---

[12]Contrary to Zhang's contention, MLRPC 1.16(a) does not state that the lawyer shall withdraw his or her "appearance," and instead states that a lawyer "shall withdraw from the representation" if the representation has commenced.  Thus, Zhang's argument that she was not required to withdraw from the representation of Wife because she never entered her appearance in the Virginia Court is based on a misreading of MLRPC 1.16(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 3.1. The record demonstrates that Zhang—not Lu—first suggested an annulment based on Husband's "impotence" despite having no knowledge of, or reason to believe, that Husband had such a medical condition, and despite not having discussed the matter with Wife. Zhang admitted as much at a deposition. In other words, Zhang lacked a good faith basis for asserting Husband's alleged medical condition as a ground for annulment. That Husband's counsel agreed with Zhang's suggestion does not absolve Zhang from proposing "impotence" as a ground for annulment without any knowledge or basis for believing that Wife would be able to prevail on such a ground. The lack of a good faith basis for asserting such a ground was manifested by the Virginia Court's order setting aside the February Agreement at Wife's behest.

### MLRPC 3.7(a) (Lawyer as Witness)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 3.7(a), and maintains that, because she never considered herself to be Wife's attorney, there was no need for her "to strike herself as a witness or resign as [Wife]'s attorney[.]" Zhang argues that the Rule was not implicated because, having not entered her appearance in the Virginia Court, she did not "act as advocate at a trial[.]"

MLRPC 3.7(a) provides as follows:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on

the client.

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 3.7(a). Zhang was Wife's counsel. Zhang's contention that a lawyer does not act as an advocate where he or she does not enter his or her appearance in a particular court lacks merit. MLRPC 3.7 does not state that the "advocate at a trial" must have entered his or her appearance in a court to be considered an "advocate." And the term "advocate" is defined by Black's Law Dictionary as "[a] person who assists, defends, pleads, or prosecutes for another." Black's Law Dictionary 60 (8th ed. 2004). Thus, that Zhang did not enter her appearance does not relieve her of the responsibility of complying with MLRPC 3.7(a). Indeed, the very matter at issue demonstrates that Zhang violated MLRPC 3.7(a). In the answers to interrogatories that Zhang provided to Metcalf, Zhang is identified as a potential witness. This demonstrates that Zhang, while acting as an advocate for Wife by preparing answers to interrogatories, identified herself (the advocate) as a potential witness.

### MLRPC 4.1(a) (Truthfulness in Statements to Others)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 4.1(a), and argues that the conclusion is not supported by clear and convincing evidence.

MLRPC 4.1(a) provides:

In the course of representing a client a lawyer shall not knowingly:

> (1) make a false statement of material fact or law to a third person; or
> (2) fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

Comment [1] to MLRPC 4.1 explains that misrepresentations can occur in one of two manners: "A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements."

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 4.1(a). Zhang falsely told or led Metcalf to believe that Wife had difficulty with the English language and that all communication had to be handled through her. Zhang also falsely led Metcalf to believe that Wife had participated in the settlement negotiations on February 17, 2011, and that Wife knew of and consented to the terms of the February Agreement. Metcalf testified that, after discussing the matter with Zhang, there was "no question in [her] mind" that she was left with the "impression" that Zhang had discussed the February Agreement's terms with Wife prior to the execution of the February Agreement and that Wife was "okay" with the terms. Thus, there are at least two instances where Zhang made false statements of material fact to Metcalf.

## MLRPC 5.5(a) (Unauthorized Practice of Law)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 5.5(a), and argues that she did not represent Wife before the Virginia Court in the annulment/divorce matter; *i.e.*, she did not practice law in Virginia.

MLRPC 5.5(a) states: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Comment [1] to MLRPC 5.5 further explains, in relevant part: "A lawyer may

practice law only in a jurisdiction in which the lawyer is authorized to practice."

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 5.5(a). It is readily apparent that Zhang represented Wife in the annulment/divorce matter. Although Zhang did not sign any pleadings submitted to the Virginia Court, it is undisputed that Zhang drafted and prepared pleadings to be filed, participated in settlement negotiations, and prepared for hearings. Drafting pleadings, engaging in negotiations, conducting research, and preparing for hearings are actions routinely taken by lawyers in the practice of law. To engage in the practice of law does not require that one enter an appearance, or even initiate a lawsuit. See Attorney Grievance Comm'n v. Brisbon, 422 Md. 625, 641, 31 A.3d 110, 120 (2011) ("Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." (Citation and internal quotation marks omitted)). In short, Zhang represented Wife in the Virginia Court although she was not licensed to practice law in Virginia and did not enter her appearance in the annulment/divorce matter.

### MLRPC 7.4(a) (Communication of Fields of Practice)

Zhang excepts to the hearing judge's determination that she violated MLRPC 7.4(a). Zhang argues that the amended petition failed to include any allegation that she held herself out as a specialist and that, accordingly, she lacked fair notice of the charge.

MLRPC 7.4(a) provides: "A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law, subject to the requirements of

[MLRPC] 7.1. A lawyer shall not hold himself or herself out publicly as a specialist."

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 7.4(a). Zhang's law firm's website states that it "is one of the best firms specialized in the immigration and corporate law practice in the Washington, DC area." The website describes Zhang as being "specialized in the immigration and corporation law practice representing corporate and individual clients on their immigration matters and business transactions." These two statements demonstrate that Zhang held herself and her law firm "out publicly as a specialist" in immigration and corporation law.[13]

### MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 8.4(c) and argues that "none of the predicate violations which compose the elements for a M[L]RPC Rule 8.4 violation have been proven by 'clear and convincing evidence.'"

MLRPC 8.4(c) provides: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]" In Attorney Grievance Comm'n v. Dore, 433 Md. 685, 707-08, 73 A.3d 161, 174 (2013), we stated "that dishonesty and misrepresentation under [MLRPC] 8.4(c) have no requirement of intent to deceive." In other words, "so long as an attorney knowingly makes a false

---

[13]Although there is no specific allegation in the amended petition filed by Bar Counsel identifying these statements from the website, Bar Counsel charged a violation of MLRPC 7.4, thus placing Zhang on notice that she was being charged with holding herself out publicly as a specialist. And, at the hearing, excerpts from the website were admitted into evidence during Bar Counsel's case, thus providing Zhang with the opportunity to address the matter.

statement, he necessarily engages in conduct involving misrepresentation [under MLRPC 8.4(c)]. No intent to deceive is necessary." Id. at 708, 73 A.3d at 174 (citation omitted). Fraud and deceit, on the other hand, typically require that Bar Counsel allege and prove an intent to deceive. Id. at 708, 73 A.3d at 174.

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 8.4(c). Zhang was not truthful in her dealings with Metcalf concerning Wife's representation, and made false statements of material fact to Metcalf about Wife's ability to communicate in English and Wife's knowledge of, and consent to, the terms of the February Agreement. These circumstances alone demonstrate that Zhang engaged in conduct involving dishonesty and misrepresentation. In addition, prior to the hearing on the motion to set aside, Zhang provided Metcalf with notes that contained numerous misrepresentations, including that Wife had given Metcalf "general authorization" to settle the case when, in actuality, it was Zhang who advised Metcalf that she (Zhang) had authorization to speak for Wife, and it was Zhang who testified at deposition that she had been given a global authorization by Wife and Wife's parents. The statement prepared by Zhang obscured her role in Wife's representation altogether and misrepresented the facts of the case. This conduct certainly involved dishonesty, if not an intent to deceive the Virginia Court as to Zhang's role in Wife's representation.

**MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)**

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 8.4(d).

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "In general, a[ lawyer]

violates [MLRPC] 8.4(d) when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession." Dore, 433 Md. at 696, 73 A.3d at 167 (citation and internal quotation marks omitted).

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 8.4(d). Zhang represented Wife in an annulment/divorce matter in Virginia even though she was not licensed to practice law in Virginia and had a conflict of interest. She failed to convey the terms of the January and February settlement agreements to Wife, yet she authorized Metcalf to sign the agreements on Wife's behalf. Zhang engaged in dishonest conduct, making false statements and misrepresentations to Metcalf and concealing her role in Wife's representation from the Virginia Court. And, Zhang's conduct resulted in the February Agreement being set aside. Considered in its entirety, Zhang's conduct negatively reflected on attorneys and the legal profession, and had the effect of bringing the legal profession into disrepute.

## MLRPC 8.4(a) (Violating the MLRPC)

Zhang excepts to the hearing judge's conclusion that she violated MLRPC 8.4(a).

"It is professional misconduct for a lawyer to[] violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another[.]" MLRPC 8.4(a).

Here, clear and convincing evidence supports the hearing judge's conclusion that Zhang violated MLRPC 8.4(a). As discussed above, Zhang violated MLRPC 1.1, 1.2(a), 1.4(a), 1.7(a), 1.16(a), 3.1, 3.7(a), 4.1(a), 5.5(a), 7.4(a), 8.4(c), and 8.4(d).

- 38 -

## E. Sanction

Bar Counsel recommends that we disbar Zhang. Zhang argues that she should not "be subject to formal discipline" because Bar Counsel failed to prove the violations of the MLRPC by clear and convincing evidence. Alternatively, Zhang recommends that we reprimand her.

> In <u>Dore</u>, 433 Md. at 717, 73 A.3d at 180, we stated:
>
> When we impose sanctions, our goal is not to punish the [lawyer], but rather to protect the public and the public's confidence in the legal profession [and] to deter other lawyers from violating the [MLRPC]. To achieve this goal, the sanction should be commensurate with the nature and the gravity of the misconduct and the intent with which it was committed. In determining an appropriate sanction, we often refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions*, which focus on the nature of the ethical duty violated, the lawyer's mental state, the extent of the actual or potential injury caused by the lawyer's misconduct, and any aggravating or mitigating [factor]s.

(Second alteration in original) (citations and internal quotation marks omitted).

Here, as to the nature of the ethical duty violated, Zhang violated MLRPC 1.1, 1.2(a), 1.4(a), 1.7(a), 1.16(a), 3.1, 3.7(a), 4.1(a), 5.5(a), 7.4(a), 8.4(c), and 8.4(d) by representing Wife in an annulment/divorce matter despite a conflict of interest; by failing to provide competent representation and to conduct adequate research into grounds for annulment; by making misrepresentations to Metcalf concerning Wife's ability to communicate in English and Wife's knowledge of, and consent to, the terms of the February Agreement; and by effectively concealing her role in Wife's representation from the Virginia Court. As to Zhang's state of mind, the record demonstrates that, Zhang purposefully engaged in misconduct to assist Wife in a personal matter. As to the

- 39 -

actual or potential injury that Zhang's misconduct caused, Zhang's misconduct

negatively impacted the public's perception of the legal profession, and necessitated that

the February Agreement be set aside.

In Attorney Grievance Comm'n v. Davy, 435 Md. 674, 710, 80 A.3d 322, 342-43

(2013), we stated:

> Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the [attorney] disciplinary proceeding[] by intentionally failing to comply with rules or orders of the [Commission]; (f) submission of false evidence, false statements, or other deceptive practices during the [attorney] disciplinary proce[eding]; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of the victim; (i) substantial experience in the practice of law; [and] (j) indifference to making restitution.

(Some alterations in original) (citation and paragraph breaks omitted).

Here, the hearing judge did not find any aggravating factors. Upon our

independent review, we discern two aggravating factors: Zhang engaged in a pattern of

misconduct and violated several MLRPC.

The following constitute mitigating factors:

> (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith efforts to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to [the Commission] or cooperative attitude toward [the attorney discipline] proceeding[]; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the [lawyer] is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the [lawyer]'s recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in [the attorney]

disciplinary proceeding[]; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses.

Davy, 435 Md. at 712-13, 80 A.3d at 344 (some alterations in original) (citation and paragraph breaks omitted).

Here, the hearing judge found that Zhang "did not meet her burden of proving any mitigation." Zhang excepts to this finding and argues that the hearing judge erred in not finding the following mitigation: (1) the absence of a prior disciplinary record; (2) the absence of a selfish or dishonest motive; (3) her taking steps to alert the Virginia Court of the misrepresentation about Husband's "impotence"; and (4) her cooperation with Bar Counsel. Upon our independent review, we determine that the record establishes the absence of prior attorney discipline as the sole mitigating factor. At oral argument, Bar Counsel conceded that Zhang had no prior disciplinary record.

As to the other three factors alleged by Zhang to be mitigating—motive, rectification, and attitude—the record refutes, rather than supports, Zhang's contentions. Zhang made a misrepresentation regarding Husband's medical condition to help Wife, her relative. Although the motivation of helping a relative may not be at the most egregious end of selfishness (i.e., seeking personal gain), Zhang nonetheless had a personal interest in achieving a positive outcome for her relative, and her motive was not free from self-interest. Zhang's filing of a motion to set aside the February Agreement based on her own dishonesty does not constitute a "timely good faith effort[] . . . to rectify consequences of misconduct[.]" Davy, 435 Md. at 713, 80 A.3d at 344. And, there is no basis to conclude that Zhang was cooperative with Bar Counsel such that the

cooperation would rise to the level of a mitigating factor. Thus, based on this record, we conclude that the only mitigating factor is the absence of prior attorney discipline.

In Attorney Grievance Comm'n v. Elmendorf, 404 Md. 353, 357, 360, 363, 946 A.2d 542, 544, 546, 548 (2008), this Court reprimanded a lawyer who violated MLRPC 8.4(d). The lawyer exchanged personal e-mails with a woman who inquired "whether there was any way to get around the requirement that the parties be separated one year in order to obtain a no-fault divorce." Id. at 355-56, 946 A.2d at 543-44. In a "brief, off-the-cuff response via e-mail," the lawyer told the woman: "You can file whatever you want so long as the parties say that it has been a year, the court won't question it so long as the parties agree to that." Id. at 356, 946 A.2d at 544. In concluding that a reprimand was the appropriate sanction, we observed that "the hearing judge found, not that the [lawyer] intentionally engaged in the conduct, or gave the advice intending it to be followed, but simply that it 'was such that it *could have* given [the woman] the impression that intentionally misrepresenting information to the Court is acceptable as long as the parties set forth the same information.'" Id. at 363, 946 A.2d at 548 (emphasis in original). Also, there was "no indication that" the woman acted upon the lawyer's e-mail. Id. at 363, 946 A.2d at 548.

In Attorney Grievance Comm'n v. Tanko, 408 Md. 404, 416, 419, 426, 969 A.2d 1010, 1018, 1020, 1024 (2009), this Court suspended from the practice of law for sixty days a lawyer who violated MLRPC 3.3 and 8.4(d). This Court stated:

> [T]he [lawyer] filed expungement petitions for charges ineligible for expungement in an attempt to have the petitions "slip by" the court and be granted. Further, the hearing judge found that the [lawyer] was aware of

the three-year waiting period–this was evidenced by his acknowledgement to that effect in a letter to Bar Counsel, as well as by his striking certain wording in the petitions he filed–and that his actions in this regard were misleading to the District Court. While the [lawyer]'s actions were indeed misleading and, to a lesser degree, negligent, his actions do not rise to the level necessitating disbarment. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (dishonest–perjurious and fraudulent–conduct ordinarily should result in disbarment). And when we consider, in mitigation, the [lawyer]'s lack of any prior disciplinary action and, as stated by the hearing judge, "his misunderstanding of the relevant case and statutory law[,]" the appropriate sanction in this case is a sixty day suspension.

Tanko, 408 Md. at 425-26, 969 A.2d at 1023-24 (last alteration in original).

In Attorney Grievance Comm'n v. McGlade, 425 Md. 524, 546, 550, 543, 42 A.3d 534, 547, 549, 545 (2012), even though the Commission recommended disbarment, this Court indefinitely suspended from the practice of law a lawyer who violated MLRPC 1.1, 1.2, 1.3, 1.4, 3.3, 8.4(a), 8.4(c), and 8.4(d). In McGlade, id. at 549-50, 42 A.3d at 549, we explained why an indefinite suspension was the appropriate sanction:

> The appropriate sanction in this case must be greater than the sanctions imposed in [two other cases—a sixty-day suspension and a forty-five-day suspension], because [the lawyer]'s conduct–negotiating a settlement without his client's knowledge while suggesting to opposing counsel that the client was being consulted and, worse, suggesting thereafter to the court that the negotiated consent order had his client's approval—was more severe than that in either of those cases. The sanction, though, ought not be as severe as the disbarment ordered in [another case], as [the hearing judge] did not find that [the lawyer] committed a crime or perpetrated an actual fraud upon the court. Moreover, we do not overlook [the lawyer]'s fine reputation as a lawyer, his otherwise unblemished disciplinary record, and the "modicum" of remorse found by [the hearing judge].

And, in Attorney Grievance Comm'n v. Keiner, 421 Md. 492, 521-22, 527, 27 A.3d 153, 171, 174 (2011), we disbarred a lawyer who violated MLRPC 1.4(a), 1.4(b),

8.4(a), 8.4(b), 8.4(c), and 8.4(d). The lawyer failed to communicate with clients; "misappropriated the law firm's resources, by using the firm's postage, paper, various office supplies, and Accurint subscription to locate potential clients"; and "altered and deleted documents within the firm's electronic client files." Id. at 522-23, 27 A.3d at 171. The lawyer's actions were taken "with the intention of taking those clients from the law firm and making them his, once he established his own practice." Id. at 523, 27 A.2d at 171-72. We concluded that the lawyer's "intentional dishonest conduct, motivated exclusively by his desire for personal gain," warranted disbarment, as the lawyer failed to prove any compelling extenuating circumstances. Id. at 527, 27 A.2d at 174.

Here, Zhang represented her niece, Wife, in an annulment/divorce matter in Virginia despite a conflict of interest with her representation of Husband in an immigration matter and despite not being licensed to practice law in Virginia. In furtherance of her representation of Wife, Zhang made misrepresentations to co-counsel concerning key issues, including communication and settlement agreements, and took steps to conceal her role in Wife's representation. Such misconduct involved dishonesty, misrepresentations, and false statements of material fact.

Under this Court's jurisprudence, and in agreement with the Commission, we conclude that disbarment is the appropriate sanction for Zhang's violations of MLRPC 1.1, 1.2(a), 1.4(a), 1.7(a), 1.16(a), 3.1, 3.7(a), 4.1(a), 5.5(a), 7.4(a), 8.4(c), 8.4(d), and

8.4(a).[14] Zhang's conduct involved a series of intentional dishonest acts committed over a sustained period of time. Zhang's dishonest conduct ranged from misleading Metcalf about Wife's ability to speak English to deceiving the Virginia Court. Cf. Keiner, 421 Md. at 527, 27 A.3d at 174 (Where a lawyer engages in "intentional dishonest misconduct, motivated exclusively by his desire for personal gain," and where "the totality of the mitigation" the lawyer proves "does not constitute the 'compelling extenuating circumstances' necessary to permit a sanction less than disbarment[,]" then disbarment is appropriate. (Citations omitted)); Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 418, 773 A.2d 463, 488 (2001) ("[I]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. . . . Disbarment ordinarily should be the sanction for intentional dishonest conduct.").

There is only one mitigating factor, lack of prior attorney discipline, and no compelling extenuating circumstances. Moreover, two aggravating factors accompany Zhang's misconduct—Zhang engaged in a pattern of misconduct and violated numerous MLRPC. We have carefully examined Zhang's mental state. See Dore, 433 Md. at 717, 73 A.3d at 180 (This Court considers the "lawyer's mental state" in determining an appropriate sanction.). Although Zhang's assistance of Wife involved no intent for

[14]We disagree with Zhang's recommendation of a reprimand. Reprimands or short periods of suspension from the practice of law may be appropriate in cases in which there are few violations of the MLRPC or where the conduct is fairly innocuous. See, e.g., Elmendorf, 404 Md. at 363, 946 A.2d at 548. Here, by contrast, Zhang violated multiple MLRPC—thirteen to be exact—during Wife's representation, and her conduct involved dishonesty, misrepresentations, and the unauthorized practice of law, among other things.

personal financial gain, nor any intent for personal financial or business gain for Wife, a young relative for whom Zhang testified she felt parental responsibility,[15] Zhang's misconduct consisted of: (1) failing to communicate settlement offers to Wife; (2) misrepresenting Wife's ability to communicate in English to Metcalf, thereby causing Metcalf to not speak directly with Wife for over three months; (3) misleading Metcalf as to Wife's knowledge of and consent to the February Agreement and Wife's participation in the settlement negotiations leading up to the execution of the February Agreement; (4) authorizing Metcalf to execute the January Agreement and February Agreement on Wife's behalf despite Wife's lack of knowledge of or consent to the agreements; (5) falsely telling Metcalf that Wife had agreed to the February Agreement's terms; (6) using her website to hold herself out publicly as a specialist in immigration and corporate law; (7) using her website to falsely state that she was authorized to practice law in Virginia; (8) engaging in the unauthorized practice of law in Virginia; (9) representing Wife despite the existence of a conflict of interest; (10) falsely asserting Husband's alleged medical condition as a ground for annulment despite the lack of a good faith basis for asserting the claim; (11) having Metcalf present false information to the Virginia Court as to Husband's alleged medical condition; and (12) causing the Virginia Court to enter the consent order memorializing the terms of the February Agreement containing false information regarding Husband.

---

[15]At the hearing, Zhang testified that Wife is her brother's daughter and that, when Wife was in the United States, she was to "take care of" Wife and act as a parent to Wife. This testimony is not endorsed or adopted in the hearing judge's findings of fact.

Over time, Zhang's mental state changed from helping a family member to concealment of her misconduct from the Virginia Court through intentional dishonest acts committed over a sustained period of time. Zhang took steps to conceal her representation of Wife from the Virginia Court, by dropping the plan to seek *pro hac vice* admission to the Bar of Virginia because she realized a conflict of interest existed. Later, Zhang asked Metcalf to misrepresent the facts and circumstances that led to the signing of the February Agreement at the March 18, 2011, hearing to conceal Zhang's role in Wife's representation.

Although ostensibly similar, Zhang's misconduct is more serious than that of the lawyer in McGlade, 425 Md. at 549-50, 42 A.3d at 549, in which this Court refrained from disbarring the lawyer where: (1) the lawyer did not "perpetrate[] an actual fraud upon the court"; (2) the lawyer's misconduct was comprised of an isolated incident; and (3) remorse mitigated the lawyer's misconduct. By contrast, here: (1) Zhang's false statements to Metcalf and Lu eventually led to the Virginia Court's vacating the consent order and stating that an attempted fraud had been perpetrated on the Virginia Court; (2) Zhang made multiple misrepresentations over a prolonged period of time; and (3) the record does not demonstrate that remorse mitigates Zhang's misconduct.

Simply put, we are satisfied that disbarment is the sanction that will best "protect the public[.]" Dore, 433 Md. at 717, 73 A.3d at 180 (citation and internal quotation marks omitted). Even taking into account Zhang's initial mental state to help a relative, and even if that mental state were to be deemed a mitigating factor, such circumstances would not prevent imposition of disbarment where Zhang's conduct involved

intentionally dishonest conduct—pervasive misrepresentations that are not excused by compelling extenuating circumstances. Thus, despite our recognition that Zhang's initial motivation or mental state may have been to help a family member, intentional dishonest conduct of the type and pervasiveness that Zhang displayed, and the lack of compelling extenuating circumstances, leads to the inescapable conclusion that disbarment is the appropriate sanction. To conclude otherwise would be to carve a one-case exception out of years' worth of case law. See, e.g., Vanderlinde, 364 Md. at 418, 773 A.2d at 488.

Zhang engaged in a pattern of deception that at first was motivated by a desire to help a family member, cf. Attorney Grievance Comm'n v. Sheinbein, 372 Md. 224, 261, 244, 254, 812 A.2d 981, 1002, 992, 998 (2002) (This Court disbarred a lawyer who helped his son, a murder suspect, flee the country; this Court stated: "Inherent in an attorney's duty is the upholding of the law, even above his own or his family's interests."), and later was motivated by a desire to conceal her own misconduct. Although Zhang's motivation initially had been to help a relative, Zhang's motivation clearly changed to the purely selfish interest of concealing her own misconduct. Cf. Attorney Grievance Comm'n v. Blum, 373 Md. 275, 305, 304, 818 A.2d 219, 237, 236 (2003) (This Court disbarred a lawyer who had made "multiple, blatant misrepresentations . . . in an attempt to obfuscate the truth and save his own skin.").[16]

---

[16]We are aware that Zhang's misconduct is factually distinct from that of the lawyers in Sheinbein and Blum. We rely on Sheinbein only for the premise that a lawyer's motive to help a family member does not militate in favor of a lesser sanction. Similarly, we rely on Blum only for the premise that a lawyer's motive to conceal his or her own misconduct militates in favor of a greater sanction.

Zhang's abandonment of her ethical obligation to be honest on multiple occasions over such a significant period of time, combined with her involvement in sponsoring the false February Agreement to the Virginia Court, and her efforts to conceal her own misconduct, persuades us that disbarment is the appropriate sanction.

For the above reasons, we disbar Zhang.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(B), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RUNAN ZHANG.**

Circuit Court for Montgomery County
Case No. 28641M
Argued: May 6, 2014

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

RUNAN ZHANG

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Concurring and Dissenting Opinion
by McDonald, J., which Adkins, J. joins.

Filed: July 21, 2014

The Majority Opinion thoroughly and accurately reviews the record of this proceeding. I agree with the Majority's disposition of the exceptions. My only disagreement is with the sanction. I would impose an indefinite suspension.

There is no question that Ms. Zhang violated several provisions of the MLRPC[1]; the more difficult question is the sanction to be imposed. One of the potential mitigating factors that we recognize is the "absence of a ... selfish motive." Majority slip op. at 40. There

_____

[1]One of the violations in this case suggests that a rule is ripe for revision. In particular, we find that Ms. Zhang violated MLRPC 7.4(a) because she stated on her website that she "specialized" in certain areas of practice. Majority slip op. at 34-35. This appears to be a violation of the rule, but does the rule itself make sense?

A random walk through the websites of law firms listed in the yellow pages of the Maryland Lawyers' Manual yields many instances in which lawyers strongly imply, or state in other words, that they specialize in certain fields. Limitation of one's practice to certain areas and disclosure of that limitation to the public is a good thing. A lawyer who tries to be a jack of all trades will be competent at none and may commit more serious violations of the MLRPC. A person who is looking for a lawyer to help with a divorce should not waste time considering whether to hire a lawyer whose practice is devoted entirely to workers' compensation. At worst, the violation of MLRPC 7.4(a) here is a case of "ineligible synonym," perhaps worthy of a five-yard penalty from the podium, but not itself a cause for disbarment.

The Maryland version of Rule 7.4(a) flatly prohibits a lawyer from holding out as "specialist." By contrast, Rule 7.4(a) of the current version of the model rules adopted by the American Bar Association ("ABA") prohibits a lawyer from stating or implying that the lawyer is "certified as a specialist" – a statement that implies that some regulatory body has endorsed the lawyer's ability in a particular area. The commentary to the model rule states that "A lawyer is generally permitted to state that the lawyer is a 'specialist,' practices a 'specialty,' or 'specializes in' particular fields, but such communications are subject to the 'false and misleading' standard applied in Rule 7.1 concerning a lawyer's services." ABA, Model Rules of Professional Conduct (2013), Rule 7.4, Comment [1], at 561. Perhaps it would be worth considering a conforming revision to our rule.

1

appears to be no disagreement that Ms. Zhang became involved in the Virginia proceeding that led to this disciplinary action because she wished to help a young niece – for whom she felt responsible – who was in the process of immigrating to this country and who apparently had made a mistake in entering into a marriage. The Majority concedes that "the motivation of helping a relative may not be at the most egregious end of selfishness," but discounts it on the ground that she had "a personal interest in achieving a positive outcome for her relative" and therefore was "not free from self-interest." *Id*. at 41.

In my view, "absence of a selfish motive" does not mean "selfless." In other words, an errant attorney need not be a candidate for canonization to be worthy of a sanction short of disbarment. Rather, this mitigating factor helps distinguish situations in which an attorney acts for purposes of self-advancement, greed, or some dishonest purpose, from those in which an attorney goes astray in a misguided effort to help another. Although many of her actions were wrong, misleading to a court, and self-defeating, Ms. Zhang's underlying motivation was to help her niece and, unlike the situation in *Sheinbein*,[2] the goal of obtaining a divorce for her niece was perfectly legal. I would reserve disbarment for serious misconduct with a less benevolent motive.

Judge Adkins joins this opinion.

---

[2]*Attorney Grievance Comm'n v. Sheinbein*, 372 Md. 224, 812 A.2d 981 (2002).

2